## Willard's Appeal.

1. The doctrine that the Orphans' Court is a court of equity, means that in the exercise of its limited jurisdiction, conferred entirely by statute, it applies the rules and principles of equity.

2. The Orphans' Court has no authority to make a decree on a bill praying for a declaration of the rights of parties under a will.

3. Such decree would not be binding on any of the parties.

4. Consent cannot give jurisdiction.

April 2d 1870.  Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.  READ, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Lycoming county*: No. 415, to January Term 1870.

William Waldo Willard died about the 1st of September 1864, having made his will dated August 24th preceding. The will was proved September 27th, and letters c. t. a. granted to E. S. Lowe and Robert Faries.

Mr. Willard left to survive him a widow Catharine E. Willard, and two children of a former wife, Anna C. Willard and Lizzie P. Willard. On the 24th of February 1865, Anna C. Willard died intestate unmarried and without issue; and on the 25th a son was born of his widow C. E. Willard, who was named William W. Willard.

The will was as follows:—

"First. I will the interest of three thousand dollars to my beloved mother, Clarissa Willard, of Williamsport, Lycoming county, Pennsylvania, during her natural life, to be paid to her in semi-annual payments of ninety dollars, on the first days of July and January in each year after my decease, and at the death of my mother this bequest to revert to my children and heirs.

"Second. As to the residue of my estate, I want one-half secured to the benefit of my beloved present wife, Catharine Emily Willard. And I also will to my beloved wife the whole of the house and lot in which we now reside, valuing the same at seven thousand dollars, to be hers during her natural lifetime. All the residue of my estate shall be for the benefit of my two little girls, Anna C. Willard and Lizzie P. Willard, for their use and benefit for them and their heirs for ever.

"At the decease of my beloved wife, this bequest of seven thousand dollars to revert to my heirs at law share and share alike, to those heirs who shall be living, or entitled to be represented in said estate.

"The bequest of three thousand dollars to be put in the hands of Henry F. Snyder, for which he is to give proper bond and security to be approved of by the Orphans' Court of Lycoming county."

J. W. Maynard was appointed guardian of Lizzie P. Willard, and on the 14th of July 1867 presented a petition setting

forth the will of the decedent and the other facts above stated; making other averments and praying the court to decree:

1. That $3000 be paid to Snyder for the use of Clarissa Willard, and after her decease be paid to Lizzie P. Willard and William W. Willard.

2. That the executor render an account.

3. That the executor pay into court one-half the moneys in his hands, less $7000, the valuation of the house and lot, to be invested under the direction of the court for the benefit of the widow, and that a trustee be appointed to invest the same.

4. That the executor be required to pay to the guardian as the share of his ward, one-half of the assets, less the $7000.

5. That Snyder, the trustee under the will, render an account of the assets received and paid by him.

6. That the widow render an account of all the estate of the decedent which had come to her hands.

7. That Snyder within 30 days after the death of Clarissa Willard, pay over to Lizzie P. Willard and William W. Willard, the $3000 set apart for her life.

8. That the title to all the lands of the testator, except the house and lot, is vested in Lizzie P. Willard, subject to the widow's life estate in the one-half.

9. That the title to the house and lot valued at $7000 is vested in Lizzie P. Willard and William W. Willard, subject to the widow's life estate.

10. General relief.

The widow and the guardian of William W. Willard filed an answer to the bill.

The Orphans' Court (Gamble, P. J.) decreed as follows:—

"1. The testator has not made such provision for his posthumous child as to evince such to have been his intention. He, therefore, died intestate as to that child. Therefore Waldo W. Willard is entitled to such share of the estate as the intestate laws give to him, and that his guardian shall file in the Orphans' Court of Lycoming county before distribution of the estate a full release of all claim under the will of his late father, the said W. W. Willard, deceased.

"2. That the interest of $3000 to Clarissa Willard during life, and at her death the principal sum to his children and heirs, is a specific bequest appropriating this sum as designated and not to be affected or diminished, provided the residue of the estate is sufficient to secure Waldo his interest. That the principal, subject to the annuity, vested in Anna C. and Lizzie P. Willard, at the death of the testator. That at the death of Anna C. her moiety passed to her sister and half-brother, Waldo.

"3. The residue of the estate, after deducting Waldo W. Willard's interest under the intestate laws, and the above-mentioned $3000, is to be divided into two equal parts, valuing the homestead,

for that purpose, at $7000. The one part including the homestead, at $7000, goes to Catharine E. Willard. The homestead for life, the balance absolutely. The other part, and also the homestead, the latter subject to the interest of Waldo, and to the life estate of Catharine E. Willard, vested at the death of the testator in Anna C. and Lizzie P. Willard. At the death of Anna C., her interest in the real estate vested in Lizzie P. and her interest in the personal estate in Lizzie P. and Waldo W. Willard."

The widow and guardian of W. W. Willard appealed to the Supreme Court, and assigned the decree for error.

*H. C. Parsons* and *D. & H. Cummin*, for appellants.

*B. S. Bently*, for appellee.

The opinion of the court was delivered, May 5th 1870, by

SHARSWOOD, J.—When it is said, as it has often been said, that the Orphans' Court is a court of equity, all that is meant is that in the exercise of its limited jurisdiction conferred entirely by statute, it applies the rules and principles of equity. So Chief Justice Tilghman, with his well-known accuracy, clearly and succinctly expresses it: "The Orphans' Court, in matters within their jurisdiction, proceed on the same principles as a court of chancery:" Guier *v.* Kelly, 2 Binn. 299. "Although the Orphans' Court," said Chief Justice Gibson, in Brinker *v.* Brinker, 7 Barr 55, "has been called a court of equity, in respect to the few subjects within its jurisdiction, the ancillary powers of such a court have not been given to it. It is a special tribunal for specific cases; and its resemblance to a court of equity consists in its practice of proceeding by petition and answer containing the substance, but not the technical subtleties and nice distinctions of a bill in equity; by which, however, justice is obtained more conveniently and as certainly as in courts of equity, purely so called. As the Orphans' Court, therefore, has not the general powers of a court of equity, it cannot entertain a bill of discovery:" George's Appeal, 2 Jones 260; Shollenberger's Appeal, 9 Harris 341; Snyder's Appeal, 12 Casey 168; Woodward's Appeal, 2 Wright 328.

The petition in the Orphans' Court in this case was in the form of a bill in equity, conceived as though that court, like the Courts of Common Pleas, had a separate equity side. After setting forth the will of William Waldo Willard, and stating or charging a particular construction of it in six numbered paragraphs—it prefers nine special prayers for relief, besides the prayer for general relief in the usual style. 1. That the administrator *cum testamento annexo* shall be decreed to pay a legacy not charged upon land: Galloney's Appeal, 6 Barr 37. 2. That the administrator file his account. 3. That he pay into court one-half of all the moneys of

[Willard's Appeal.]

the estate in his hands (less $7000, the valuation money of a house and lot mentioned in the will), to be invested by the court or a trustee appointed by it.   4. That he pay the other half to the orator in the bill.   5. That the guardian of the two minor children file his account.   6. That the widow file an account of all the assets of the estate in her hands at the death of the testator or since received by her from the administrator.   7. That the trustee named in the will to hold the legacy bequeathed to the testator's mother for life, shall within thirty days after her death pay over the principal of the said legacy to the children in certain proportions, both of them now being minors.   8. That the court shall decree that the title to all lands and tenements, wheresoever situated, of which the testator died seised (except the house and lot aforesaid), is vested in one of the children, subject to the life estate of the widow.   9. That the court shall decree that the title to the house and lot before mentioned is vested in the minor children in certain proportions, subject to said life estate.   The only matters in this long list of prayers, which appear clearly to be within the jurisdiction of the Orphans' Court, are, that the administrator and guardian respectively shall render their accounts. The court below, however, upon this bill and answers filed, decree nothing to be done, except that the guardian of Waldo William Willard, a minor, should file in the Orphans' Court of Lycoming county before distribution of the estate a full release of all claims under the will of his father; the court holding that the will as to him was revoked by his subsequent birth.   The other parts of the decree consist merely of a declaration of the opinion of the court upon the proper construction of the will.

It would, perhaps, be a very convenient practice immediately upon the death of a decedent to have all possible questions which might arise upon the construction of his will, and in the settlement and distribution of his estate, settled by a decree of the Orphans' Court *in limine*, and by way of anticipation, and by an appeal to the Supreme Court from such a decree, have a final and conclusive determination of the subject.   It would certainly save counsel a great deal of responsibility in giving advice.   But the Acts of Assembly which confer jurisdiction on the Orphans' Court may be searched in vain for any such power.   Without authority so derived we must say that the decree below or in this court on appeal would be inconclusive and possibly a snare.   It would not be binding upon any of the parties; certainly not upon those of them not *sui juris*.   Consent cannot give jurisdiction.   Any opinion which we should express upon the proper construction of this will in this appeal would be merely extrajudicial.

>    Decree reversed, and petition ordered to be dismissed, each party to pay their own costs in the court below and on this appeal.